D.C. No. 1:22-cv-00441-JAO-KJM

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

_____

In Re:  PANIOLO CABLE COMPANY, LLC,

Debtor.

WAIMANA ENTERPRISES INC.,

Appellant,

v.

HAWAIIAN TELCOM, INC., et al.,

Appellees.

_____

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

NO. HI-22-01180

HON. ROBERT J. FARIS

**APPELLANT'S OPENING BRIEF**

WILLIAM MEHEULA          2277
MEHEULA LAW, LLLC
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone No.: (808) 599-9554
Email:  bill@meheulalaw.com

Attorney for Appellant
WAIMANA ENTERPRISES INC.;
PA MAKANA LLC; and
CLEARCOM, INC

i

## DISCLOSURE STATEMENT

Appellant Waimana Enterprises Inc. ("**WEI**") is a privately owned Hawaii corporation, whose stock is 100% owned by a native Hawaiian.  No public corporation owns any of WEI's stock.  WEI also owns Sandwich Isles Communications ("**SIC**"), Appellant Pa Makana LLC ("**Pa Makana**") and Appellant Clearcom, Inc. ("**Clearcom**").

Date:  Honolulu, Hawaii, March 20, 2023.


/s/ *William Meheula*
WILLIAM MEHEULA

Attorney for Appellant
WAIMANA ENTERPRISES INC.; PA
MAKANA LLC; and CLEARCOM, INC.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................... i

I.     JURISDICTIONAL STATEMENT ..................................................... 2

II.    STATEMENT OF ISSUES PRESENTED ........................................... 2

III.   CONCISE STATEMENT OF THE CASE ........................................... 2

IV.    SUMMARY OF THE ARGUMENT .................................................... 3

V.     ARGUMENT ....................................................................................... 3

       A.     STANDARD OF REVIEW ....................................................... 17

VI.    CONCLUSION .................................................................................... 17

STATEMENT OF RELATED CASES ............................................................ 18

CERTIFICATE OF COMPLIANCE .............................................................. 19

CERTIFICATE OF SERVICE ....................................................................... 20

# TABLE OF AUTHORITIES

<u>Cases</u>

*Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080

(9th Cir. 2012) ................................................................................................17

*In re Cedar Funding, Inc.*, 419 B.R. 807, 820 (9th Cir. B.A.P. 2009) ...............15

<u>Statutes</u>

28 U.S.C. § 1 ...................................................................................................2

28 U.S.C. 1334(b) ....................................................................................2, 16

LBR 8003(a) ....................................................................................................2

LBR 8005 .........................................................................................................2

Fed. R. Bankr. P. 8002(b)(1)(B) ....................................................................2

D.C. No. 1:22-cv-00435-JAO-KJM

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT


In re:                                          BAP Case No. HI-22-01179 (RJF)


PANIOLO CABLE COMPANY, LLC,


                     Debtor.

_____


WAIMANA ENTERPRISES INC.,


                     Appellant,


      vs.


HAWAIIAN TELCOM, INC.;
DEPARTMENT OF HAWAIIAN
HOME LANDS, STATE OF
HAWAI'I; TRUSTEE MICHAEL
KATZENSTEIN,


                     Appellees.

_____

## OPENING BRIEF OF APPELLANT

I.     JURISDICTIONAL STATEMENT

A.     Statutory basis for subject matter jurisdiction of the District Court. Subject matter jurisdiction of the District Court is conferred under 28 U.S.C. 1334(b).

B.     Basis for claiming appellate jurisdiction.  Appellate jurisdiction is conferred pursuant to 28 U.S.C. § 1, as of right by LBR 8003(a) and by election made by HTI under LBR 8005.

C.     Timeliness of appeal.  The Bankruptcy Court's Order Denying Motion to Remand Case to State Court, or in the Alternative, for Abstention, filed April 22, 2022 [DKT. 10] entered on August 22, 2022 (Dkt # 70) ("**Order Denying Remand**").  Therefore, under Fed. R. Bankr. P. ("**FRBP**") 8002(b)(1)(B), the deadline to file a notice of appeal was fourteen (14) days after August 22, 2022. WEI, Pa Makani and Clearcom's ("**Plaintiffs**" or "**Appellants**") Notice of Appeal was timely filed on August 30, 2022 (Dkt # 77).

II.     STATEMENT OF ISSUES PRESENTED

A.     Whether the Bankruptcy Court ("**Court**") erred in not remanding the First Amended Complaint (Dkt 27) filed May 28, 2022.

III.     CONCISE STATEMENT OF THE CASE

A.     Facts relevant to issues submitted for review.

Because this appeal is primarily based on the record below concerning the Order dismissing Plaintiffs' First Amended Complaint (Dkt # 67), the relevant facts are provided in the Argument section of Appellants HI-22-01179 Opening Brief that is incorporated herein by reference and in the below Argument section.

      B.     Relevant procedural history.

Because this appeal is primarily based on the record below concerning the Order dismissing Plaintiffs' First Amended Complaint (Dkt # 67), the relevant procedural history is provided in the Argument section of Appellants HI-22-01179 Opening Brief that is incorporated herein by reference and in the below Argument section.

IV.    SUMMARY OF THE ARGUMENT

The Court committed error by not remanding Plaintiffs' First Amended Complaint (Dkt # 28) ("**FAC**") to the Circuit Court of the First Circuit, Civil No. 1CCV-22-0000321.

V.    ARGUMENT

This case started when WEI and SIC filed their Complaint on March 18, 2022 in Circuit Court of the First Circuit ("**Complaint**") against HTI that HTI removed by Notice of Removal filed on April 4, 2022 (Dkt # 1).

On May 18, 2022, the Court issued its Tentative Ruling on Motion to Dismiss the Complaint (Dkt # 22.)  The Tentative Ruling at 5 stated:

All of these claims [alleged in the Complaint] rest on the proposition that HTI did not acquire any interest in License 372 and that its conduct is inconsistent with Waimana's and SIC's continued ownership of License 372. I am inclined to rule that my prior orders confirming the Marshal's sale and approving the HTI sale foreclose this contention as a matter of law.

At the hearing on the Motion to Dismiss the Complaint on May 20, 2022, the Court granted the Motion to Dismiss for reasons set forth in the Tentative Ruling except that footnote 1 was withdrawn and Plaintiffs were granted leave to file an Amended Complaint.  *See* Order granting Motion to Dismiss (Dkt # 35).

Footnote 1 of the order stated: "Waimana and SIC have argued that this assignment [to SIC ] was limited to 'voice-only' services. While the partial assignment is limited to local and intrastate service, it covers all 'telecommunications' services and is not limited to voice."  At the hearing, Waimana's counsel argued that considering the allegations on this issue it would be inappropriate to enter this finding on a motion to dismiss.  The Court commented, "I also think, in looking back at the tentative ruling that footnote 1 was probably not necessary to this decision.  So I think that that could probably be deleted from the tentative ruling." (Dkt # 30).  Based on the record, the Court never addressed this issue after the May 20, 2022 hearing.

On May 27, 2022, Plaintiffs filed the FAC that set forth Plaintiffs' rights:

12.    Waimana is the owner and holder of License No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands ("**DHHL**") pursuant to authorization from the HHC (hereinafter

4

"**License 372**").  A true copy of License 372 is attached hereto as **Exhibit "A"** and incorporated herein by this reference.

13.    License 372 granted Waimana a right to provide "telecommunication services of all types" to HHL, <u>see</u> Exhibit A at 1:

> Licensor determines that the LICENSE established herein is essential in order to provide broad band telecommunication services of all types (including but not limited to <u>local, intrastate, interstate and international telephone</u>; video on demand interactive communication; cable television; medical and educational links; and electronic data transmission) <u>to LICENSOR'S lands</u> in a timely manner;

The added underscored words identify the type and area of telecommunication services assigned to SIC in the Partial Assignment of License, discussed below.  The right to provide all other types of telecommunication services were retained by Waimana.

14.    Under HHCA 207(c)(1), License 372 is an interest in real property issued to Waimana pursuant to HHCA 207(c)(1) and Hawaii Administrative Rules 10-4-21 and 22.

15.    By instrument dated January 15, 1996, Waimana partially assigned License 372 to SIC (the "**SIC Partial Assignment**").  A true copy of the Partial Assignment is attached hereto as **Exhibit "B."**  By instrument dated October 6, 2008, the HHC consented to the Partial Assignment.  A true copy of the Consent is attached hereto as **Exhibit "C"**.

16.    The SIC Partial Assignment is expressly limited to "*IntraLata and Intrastate telecommunication services*", which means "limited to local, intrastate, interstate and international telephone" on HHL ("**voice only service**").  Consistent with that voice only service limitation and area of service limitation, SIC was granted a Certificate of Authority from the Hawaii Public Utilities Commission to provide voice only services on HHL.

17.     Waimana caused other subsidiaries including Clearcom, Inc. and Pa Makani LLC to provide other telecommunications services (internet, wireless etc.) both on and off HHL.

18.     By instrument dated December 30, 2011, Waimana partially assigned License 372 to Pa Makani (the "**Pa Makani Partial Assignment**"), which granted "those certain rights, title and interest necessary to provide "***wireless communications services of all types***" under License 372.  DHHL consented to the Pa Makani Partial Assignment.  A true copy of the Partial Assignment is attached hereto as **Exhibit "D"**.

19.     By instrument dated May 29, 2014, Waimana partially assigned License 372 to Clearcom (the "**Clearcom Partial Assignment**"), which granted "those certain rights, title and interest necessary to provide "***broadband communications services of all types***" under License 372.  DHHL consented to the Clearcom Partial Assignment.  A true copy of the Partial Assignment is attached hereto as **Exhibit "E"**.

Regarding the Rule 9019 Settlement Agreement, the FAC alleged:

28.     By the Rule 9019 Settlement Agreement effective as of March 6, 2020, and approved and entered by the Bankruptcy Court on June 4, 2020, attached hereto as **Exhibit "L,"** the Court approved the Rule 9019 Settlement Agreement between Trustee, Paniolo Creditors, SIC, and SIC Affiliates (Waimana, Pa Makani and Clearcom), which referenced, adopted and approved the Master Relationship Agreement ("**MRA**"), a copy of the MRA is attached hereto as **Exhibit "F."**

29.     Schedule 2, section 2.3 of the MRA states:

**2.3. Entitlements.** The Parties acknowledge and agree that: (a) that certain Department of Hawaiian Home Lands License Agreement No. 372 ("DHHL License"), together with (b) the easements, leases, license agreements, letters of approval, special area management permits, rights of way or rights of entry granted to SIC or an SIC Affiliate and identified on Exhibit B hereto (the "Entitlements") are necessary for the operation and maintenance of the Paniolo Network (or were necessary for the construction of the

Paniolo Network). <u>SIC hereby agrees to assign, transfer, or convey to Paniolo all Entitlements **(other than the DHHL License)** that may by their terms be so assigned or transferred and to the extent such assignment, transfer, or conveyance would not, in Paniolo's reasonable judgment, adversely affect service in the Hawaiian Home Lands. To the extent any Entitlement may not, by its terms, be so assigned or transferred, SIC shall (i) sublease or sublicense (as applicable) the Entitlement to Paniolo; or (ii) grant to Paniolo the broadest possible right to use the Entitlement.</u> For the avoidance of doubt, <u>the Parties acknowledge and agree that **DHHL License will not be assigned by SIC to Paniolo**, but that SIC shall, and hereby does, grant to Paniolo the full benefit and use of the DHHL License for the IRU Term provided Paniolo does not exercise its rights under such grant to impair service to HHL.</u>

Emphasis added.

30. **Thus, regardless of whether the MRA was assumed by HTI, the SIC Property did not include and the Trustee did not obtain "SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands" listed in Schedule A-2 as the Trustee acknowledged that he did not obtain an assignment of SIC's interest in License 372 despite the wording in Schedule A-2.**

31. **In addition, the Trustee and HTI clearly did not obtain any portion of Waimana's interest in License 372 that was not assigned to SIC in the Partial Assignment, which includes Plaintiffs' right to provide (post FCC Order non-exclusive) telecommunications services other than voice only service on HHL including Pa Makani's Partial Assignment and Clearcom's Partial Assignment, and Plaintiffs' License 372 Easement areas that Plaintiffs developed on HHL.**

32. On November 30, 2020, without Waimana, Pa Makani, Clearcom or SIC's knowledge or concurrence, the Trustee and HTI entered into the Asset Purchase Agreement dated ("**APA**"), a true copy of which is attached hereto as **Exhibit "G"** where Katzenstein agreed to sell SIC Property as limited by the MRA and Rule 9010 Settlement Agreement (together with Paniolo's Assets) to HTI.

7

      33.     On December 16, 2020, Ryan K. P. Kanakaole, Esq., the Deputy Attorney General representing DHHL filed papers in the Bankruptcy Court, a copy of which is attached hereto as **Exhibit "O,"** confirming that, "The Buyer [HTI] will need to acquire a new license for the use of DHHL lands."   The same message was confirmed by HHC Chairman William Aila, in emails dated January 6, 2021, to alhee@waimana.com that states that License 372 has not been cancelled, and: **<u>"The License remains valid.  DHHL informed the Court that any purchaser of the assets would require a license from DHHL."</u>** And by DHHL's filing on August 19, 2021 (Dkt 432), a copy of which is attached hereto as **Exhibit "P,"** DHHL reconfirmed that HTI needs a new license to build, construct, repair, maintain and operate on HHL.

Emphasis added.

    The FAC alleged claims for trespass, conversion, unfair competition, intentional interference of contract and declaratory relief arising out of HTI using Plaintiffs' License 372 rights without authority and compensation.  Regarding the declaratory relief claim, FAC ¶¶ 66-67 allege:

      66.     Plaintiffs are entitled to a declaratory relief determination that by entering into the Rule 9019 Settlement Agreement and MRA that were approved by Order dated June 4, 2020 (Dkt 271), attached hereto as **Exhibit "L,"** even though HTI did not assume these agreements, (a) the Trustee nonetheless did not obtain <u>"SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands"</u> listed in Schedule A-2 as the Trustee acknowledged in Schedule 2, section 2.3 of the MRA that SIC did not assign its interests in License 372, which Plaintiffs have an interest in because they use SIC's excess capacity to provided non-voice telecommunications services; and (b) although Plaintiffs were parties to the 9019 Settlement Agreement, because HTI also refused to assume the MRA, HTI cannot enforce Plaintiffs' commitments made in the settlement agreement including the agreement to provide access to the Transferred Assets and Equipment as it would be unfair to continue to bind Plaintiffs to those commitments as Trustee's agreement to enter into the MRA and including the commitment that any "purchaser or

assignee approved by the Court shall be bound by the terms of the"
MRA, was consideration for Plaintiffs entering into the settlement
agreement.

67.     Plaintiffs are entitled to a declaratory relief determination
that the SIC Partial Assignment only provided SIC with the right to
provide voice only service on HHL and no other telecommunications
services throughout Hawaii, including wireless that was assigned to Pa
Makani and broadband that was assigned to Clearcom.

On June 10, 2022, HTI filed its Motion to Dismiss FAC (Dkt # 35). The.

The Motion at 11-14 argued that the first four causes of action have already been

determined by the Court's Tentative Ruling on Motion to Dismiss the Complaint

(Dkt # 22.). However, as demonstrated in Waimana's HI-22-01176 Opening Brief,

the Court incorrectly rejected the argument that based on Rule 9019 Settlement

Agreement, the Trustee did not obtain License 372 in the Marshal Salle and did not

transfer License 372 to HTI in the 363 Sale, or there were questions of fact on this

issue that required an evidentiary hearing.

The Motion at 16 argued that Plaintiffs' declaratory relief claim is untimely

and has already been decided ("But the Court has already confirmed that HTI has

indeed acquired SIC's interest in License 372 (*see* Final Enforcement Order ¶ G;

taking into account this exact argument previously raised by Waimana and SIC"

citing (Dkt # 713.)  It was not untimely because SIC first raised this argument in its

opposition memorandum to Motion to Enforce Sale Order (Dkt # 480 at 1-5) filed

on October 18, 2021 that was joined by Waimanma, and Plaintiffs were granted

leave to file the FAC.

The Motion at 21 tried to explain why the MRA was not relevant to whether

HTI bought License 372:

> **First, the assets sold, including SIC's interest in the 372 License and other access rights, are not tied to the MRA**[1], **which HTI is not a party to**[2] and which (contrary to the Plaintiffs' contention at *id.*) HTI has never sought to enforce. Second, the Plaintiffs appear to misunderstand the fundamental nature of the Sales. Notwithstanding whether the Plaintiffs consented to the Marshal Sale, SIC's assets were acquired by Paniolo through a public auction, and then sold to HTI free-and-clear under Section 363 of the Bankruptcy Code. Neither of **the Sales were conditioned in any way** upon the Plaintiffs' consent, **or upon the full compliance by all parties to the terms of the MRA or the Settlement Agreement**.[3] **In any**

---

[1] Then why was the Rule 9019 Settlement Agreement referenced as a foundation of the 363 Sale Order?

[2] But the Trustee was a party to the MRA and he transferred what he owned to HTI.

[3] But the MRA meant something to the Trustee about whether he obtained title to License 372.  HTI's interpretation of the 363 Sale Order means the references to the Rule 9019 Settlement Agreement and the MRA is a surplusage.  *In re Binghamton Bridge*, 70 U.S. 51, 74–75, 18 L. Ed. 137 (1865) ("All contracts are to be construed to accomplish the intention of the parties; and in determining their different provisions, a liberal and fair construction will be given to the words, either singly or in connection with the subject-matter. **It is not the duty of a court, by legal subtlety, to overthrow a contract, but rather to uphold it any give it effect**; and no strained or artificial rule of construction is to be applied to any part of it. If there is no ambiguity, and the meaning of the parties can be clearly ascertained, effect is to be given to the instrument used, whether it is a legislative grant or not."); Surplusage Canon. **If possible, every word and every provision is to be given effect** (verba cum effectu sunt accipienda). None should be ignored. None should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence.

10

**event, the 363 Sale transferred the assets acquired thereunder to HTI free and clear of all such continuing Interests and Claims (as defined in the 363 Sale Order) by any party**.[4]

Emphasis added.

Plaintiffs' opposition at 9-10 (Dkt # 40) argued:

> Instead of attempting to address these allegations [FAC ¶¶ 28-30] on the merits, HTI relies on the Marshall Sale Order, the 363 Sale Order and the Final Enforcement Order. They, however, do not vest or re-vest the Trustee with "SIC's interests in License Agreement No. 372".

> The Marshall Sale Order was superseded by the Rule 9019 Settlement Agreement and the MRA approved on June 4, 2020, attached to the FAC as Exhibit "L".  The 363 Sale Order at section 7 states that Transferred Assets are free of all interests and claims but under the Rule 9019 Settlement Agreement and the MRA, SIC's interest in License 372 was never obtained by the Trustee. Thus, SIC's interests in License 372 was not a Transferred Asset.

> And as noted above, the Final Enforcement Order is being challenged by Waimana's motion for reconsideration that incorporated by reference the FAC.

> Thus, dismissal is inappropriate. **Instead, discovery and a trial on the how MRA, Schedule 2, section 2.3 came about, what the MRA parties including the Trustee understood it meant as far as the transfer of SIC's interest in License 372, and the effect of HTI not assuming the Rule 9019 Settlement Agreement and the MRA.** These types of inquires will inform the trier of fact as to whether there was a meeting of minds regarding any transfer of SIC's interest in License 372.

---

https://www.law.uh.edu/faculty/adjunct/dstevenson/2018Spring/CANONS%20OF%20CONSTRUCTION.pdf from Scalia and Garner.

[4] But the Trustee can only transfer what he owns.

Emphasis added.

The Opposition at 11 added: "The Motion also does not address Plaintiffs' License 372 rights, a part of SIC's, because at best the Trustee only acquired SIC rights but not Waimana's, Pa Makani's or Clearcom's interests in License 372. Moreover, SIC's interests in License 372 (even if they were acquired by the Trustee and they were not) only apply to voice and not wireless or broadband." These assignments are attached to the FAC as Exhibits B-E.

HTI's reply (Dkt # 47) tried to minimize Plaintiffs' exclusive possessory right to License 372 "premises" by ignoring the terms of License 372 that in pertinent part provide:

17.   CONSTRUCTION OF IMPROVEMENTS.  LICENSEE shall undertake no construction until LICENSOR has reviewed and approved plans.  **All buildings or structures or other major improvements of whatever kind that LICENSEE constructs or erects on the <u>premises</u> shall remain the property of licensee** and LICENSEE shall have the right, prior to termination of this LICENSE, or within such additional period as LICENSOR in its reasonable  discretion may allow, to remove its property from the premises; provided that in the event LICENSEE shall fail to so remove such property within thirty (30) days after written notice to remove, LICENSOR may at its option retain the property or remove the same and charge the cost of removal and storage, if any, to LICESEE.

18.   MAINTENANCE OF <u>PREMISES</u>.  During the term of this LICENSE, **LICENSEE shall repair and maintain all improvements heretofore and hereafter erected upon the <u>premises</u>**, including all glass, water, and gas plumbing, electrical wiring, and all other fixtures in or on the premises with all necessary reparations and amendments whatsoever; **shall keep the <u>premises</u> and all improvements thereon in a strict clean and sanitary condition, and shall comply with all laws**, ordinances, rules and

12

regulations of the Federal, State, County and municipal governments that are allocable to the premises and improvements; and **shall allow LICENSOR or its agents, at all reasonable times, free access to the <u>premises</u> for the purpose of examining** the same or determining whether the conditions herein are being fully observed and performed, and shall make good at its own cost and expense all defects within sixty (60) days after receipt of written notice by certified mail to the last known address of LICENSEE.

19.     <u>BREACH</u>.  **If LICENSEE shall substantially fail to observe or perform any of the conditions herein contained** and on its part to be observed or performed and such failure or lack of substantial compliance shall continue for sixty (60) days after the receipt by certified mail or written notice of such failure to the address of LICENSEE, **or if LICENSEE shall abandon the <u>premises</u>, then and in any such event LICENSOR may, at its option, cancel this LICENSE Agreement and, thereupon, <u>take immediate possession of the premises</u>**, allowing LICENSEE reasonable time to remove its property therefrom, without prejudice to any remedy or right of action that LICENSOR may have against LICENSEE.

20.     <u>RIGHT OF ENTRY</u>.  LICENSOR and its duly authorized representatives shall have the **right to enter the <u>Premises</u> at all times for the purposes of conducting its own inspection** and to ensure that LICENSEE is in compliance with the provisions of this LICENSE.

23.     **<u>DEFINITION</u>**.  The word **"<u>premises</u>"**, when it appears herein, includes and shall be deemed to **include the lands described above and improvements whenever and wherever erected or placed thereon**.

Based on the plain language of these sections, SIC Parties were granted exclusive

possessory rights to the areas they developed with DHHL's approval, i.e.,

"premises", subject to DHHL's reserved rights of entry for inspection and to take

"immediate possession of the premises" in the event of breach or abandonment of

License 372.

Plaintiffs who own License 372 rights to wire and broadband telecommunications from SIC Parties License 372 premises are entitled to fees from HTI, *see* Exhibit K attached to the FAC.  The Court did not make any determination that Plaintiffs do not own the rights to wireless and broadband or that SIC's only has rights in connection with telephone telecommunications as clearly set forth in the assignments that were approved by DHHL, *see* FAC Exhibit B to E.  However, the Court determined that Plaintiffs lost their License 372 rights in connection with the Paniolo Network by failing to appeal the 363 Sale Order, but Plaintiffs agreed not to object in the Rule 9019 Settlement Agreement that the order referenced as valid.

Plaintiffs are also entitled to discovery and trial on the effect of non-assumption of the Rule 9019 Settlement Agreement because without it, Plaintiffs owe HTI no rights of access that they agreed to in the settlement agreement.  Other than the settlement agreement, HTI has no right to demand access from Plaintiffs, as any rights HTI obtained only came from SIC.

Agreements including License 372, Assignments to SIC, Pa Makani and Clearcom, and the Rule 9019 Settlement Agreement and MRA and their plain meaning support the plausibility the FAC claims that all claims stem from the fact that Plaintiffs have not surrendered their License 372 rights to HTI and since HTI only obtained SIC assets, HTI did not obtain Plaintiffs' rights to HHL areas that

they developed and to use and interfere with their License 372 right to transmit wireless and broadband.  Thus, dismissal should not have been granted in total reliance on the Final Relief Order.

Under In re Cedar Funding, Inc., 419 B.R. 807, 820 (9th Cir. B.A.P. 2009), the "Cedar Funding factors," strongly favor remand:

(1) the effect on the efficient administration of the estate – no effect as the debtor is not a party;

(2) the extent to which state-law issues predominate – HHL issues and interpretation of License 372 and assignments and calculation of lost profits predominate;

(3) the lack of novelty or difficulty of applicable law – any novelty surrounds HHL jurisdiction and license;

(4) the presence of related state-court proceedings – directly related to Plaintiffs lawsuit in First Circuit Court against DHHL for breach of License 372 and related claims, in Civil No. 1CCV-22-0000617, a copy of which without exhibits is attached to FAC as Exhibit "N" and although that case is on appeal to the Hawaii Intermediate Court of Appeals common issues of law and fact predominate and on remand the cases should be consolidated;

(5) the lack of jurisdictional bases for removal other than section 1334(b) -

There are no jurisdictional bases for removal other than 28 U.S.C. 1334(b).  The

case presents no issue of federal law.  The parties are all citizens of the state of

Hawaiʻi;

(6) the remoteness to the main bankruptcy case - This case is entirely remote

from the main bankruptcy case.  This is a dispute between non-debtors Plaintiffs,

and non-debtor HTI about future use of Plaintiffs' easement areas and premises on

HHL;

(7) the absence of any core proceeding;

(8) the inapplicability of severing claims;

(9) the burden on the federal docket;

(10) the likelihood of forum shopping – HTI did by filing the Notice of

Removal;

(11) the right to a jury trial – trial by jury has not be demanded

(12) the presence of non-debtor parties - All of the parties are nondebtors;

(13) comity; and

(14) the possible prejudice to the plaintiff – Plaintiffs as native Hawaiian organizations and beneficiaries of the HHL trust rely on their rights under License 372 and HHCA, which is a part of the Hawaii State Constitution.

Applying this test to this case clearly indicates that the FAC should be remanded as state witnesses, contracts and law predominate.

A.    STANDARD OF REVIEW

The district denial of the motion to remand is reviewed de novo.  Bates v. Mortg. Elec. Registration Sys., Inc., 694 F.3d 1076, 1080 (9th Cir. 2012).

VI.   CONCLUSION

If the Order Dismissing the FAC is reversed and remanded, it should be remanded to state court as this will be complex commercial litigation involving state law.

Date:  Honolulu, Hawaii, March 20, 2023.


/s/ William Meheula
WILLIAM MEHEULA

Attorney for Appellant
WAIMANA ENTERPRISES INC.

17

**STATEMENT OF RELATED CASES**
**PURSUANT TO CIRCUIT RULE 28-2.6**
D.C. No. 1:22-cv-00427-JAO-KJM

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

The undersigned counsel states the following:

☐ I am unaware of any related cases currently pending in this court.

☐ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

☒ I am aware of one or more related cases currently pending in this court.  The case number and name of each related case and its relationship to this case are:

*In Re:  PANIOLO CABLE COMPANY, LLC*, Case No. 18-01319 (Chapter 11)

*Waimana Enterprises, Inc. et al v. Hawaiian Telecom Inc.*, Case No. 1CCV-22-0000321 (GWBC)

*Waimana Enterprises, Inc. et al v. Department of Hawaiian Home Lands, et al,* Case NO. 1CCV-22-0000617 (DEO); CAAP-22-0000735

/s/ *William Meheula*                             Date:  March 20, 2023.

18

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ this brief contains <u>4,192</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

☒ this brief has been prepared in a proportionally spaced typeface using *(state name and version of word processing program)* Microsoft Word in 14-point Times New Roman, or

☐ this document has been prepared in a monospaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)*.

<u>/s/ *William Meheula*      </u>           Date:  <u>March 20</u>, 2023.

## CERTIFICATE OF SERVICE

D.C. No. 1:22-cv-00427-JAO-KJM

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants:

**Description of Document(s):**

 OPENING BRIEF in HI-22-01180

_/s/ William Meheula_                              Date:  <u>March 20</u>, 2023.