This case addresses the appeal of that certain *Order Denying Plaintiff Waimana Enterprises Inc.'s Motion to Remand Case to State Court, or in the Alternative, for Abstention* (the "Order Denying Remand") issued by the U.S. Bankruptcy Court. The Order Denying Remand was entered at ECF 70 of an adversary proceeding (Adv. Pro. Case No. 22-90008, the "Waimana AP") associated with the bankruptcy case of Paniolo Cable Company, LLC ("Paniolo"), Bankr. No. 18-01319 (the "Paniolo Bankruptcy").[1]

## JURISDICTIONAL STATEMENT

The Bankruptcy Court had jurisdiction to enter the Order Denying Remand under 28 U.S.C. § 1334(b). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. The Order Denying Remand was entered on August 22, 2022. Waimana Enterprises Inc. ("Waimana"), Clearcom, Inc. ("Clearcom") and Pa Makani LLC ("Pa Makani") (collectively, "Appellants") jointly filed an appeal of the Order Denying Remand on August 30, 2022. Waimana AP, ECF 77.

## STATEMENT OF THE CASE

Appellee Hawaiian Telcom, Inc. ("HTI") incorporates by reference herein the statement of the case it provided in its simultaneously-filed opposition brief in Case No. 22-435 (an appeal by Appellants of another order issued in the Waimana

---

[1] Six interrelated appeals have been initiated by related parties of rulings issued in the Paniolo Bankruptcy. These appeals are pending at Case Nos. 22-426, 22-427, 22-428, 22-434, 22-435, and 22-441. A consolidated summary timeline of the factual and procedural history underlying all six appeals has been attached hereto as **Exhibit A**.

AP), which discusses the factual and procedural history of the Waimana AP.[2] To provide this Court with additional details specifically regarding the Order Denying Remand, HTI supplements the above-referenced statement as follows:

While the Initial Motion to Dismiss was undergoing briefing, Waimana filed a motion seeking remand of this adversary proceeding to State Court (the "<u>Motion to Remand</u>") on April 27, 2022. Waimana AP, ECF 10. On May 20, 2022, because the Bankruptcy Court had dismissed the Complaint (after briefing and oral argument in connection with the Initial Motion of Dismiss), the Bankruptcy Court deferred adjudication on the Motion to Remand until after the First Amended Complaint had been filed. *See* Tr. Hr'g (May 20, 2022) at 9:20 –10:23 ("I think there's virtually 100 percent chance there will be another motion to dismiss the amended complaint, and it seems to me it might make sense to put off the hearing on the motion to remand to coincide with the hearing on the motion to dismiss . . . I think the simplest thing to do for now is to just take that hearing on the motion to remand off calendar and . . . when the amended complaint gets filed and the motion to dismiss gets filed, and that's set for hearing. . . [Appellants' counsel] can simply renotice the motion to remand to coincide with that same date . . . If for some reason the motion to dismiss isn't filed . . . you can go ahead and renotice the motion to remand also.")

---

[2] All capitalized terms used but not defined herein hold the meanings ascribed to them in this referenced statement.

Briefs were submitted by both sides on the Motion to Remand, and as planned, oral arguments were held on the same day as oral arguments in connection with the Motion to Dismiss – August 1, 2022. Waimana AP, ECF 60. The Bankruptcy Court granted the Motion to Dismiss the First Amended Complaint, and, as a result, held that the Motion to Remand was "denied as moot." Tr. Hr'g (August 1, 2022) at 21:8-13. The Bankruptcy Court's order denying the Motion to Remand was entered on August 2, 2022 (at Waimana AP, ECF 70, the "<u>Order Denying Remand</u>").

## STANDARD OF REVIEW

A bankruptcy court's decision to approve or deny remand of a case on equitable grounds is reviewed by the district court for abuse of discretion. *In re Akhoian Enterprises, Inc.*, 630 B.R. 329, 333 (C.D. Cal. 2021); *In re Enron Corp.*, 296 B.R. 505, 508 (C.D. Cal. 2003). *See also In re Caesars Ent. Operating Co., Inc.,* 588 B.R. 233, 237 and 241 n. 4 (B.A.P. 9th Cir. 2018) (applying abuse of discretion standard on review of equitable remand). Such decisions will be reversed only if those decisions were "based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based that decision." *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 351 (9th Cir. 1996); *Akhoian,* 630 B.R. at 333.

3

# SUMMARY OF ARGUMENT

The Order Denying Remand was not issued in error by the Bankruptcy Court – and while Appellants disagree with the Bankruptcy Court's discretionary decision declining remand, Appellants have not actually pointed to any errors by the Bankruptcy Court which warrant reversal. Given the inextricable ties between the causes of action in the First Amended Complaint and the Bankruptcy Court's prior Sale Orders, as well as the Bankruptcy Court's familiarity with the underlying Sales, the Bankruptcy Court not only had the jurisdiction to adjudicate the First Amended Complaint, but was the best court to do so. The decision of the Bankruptcy Court to deny remand should be affirmed.

# ARGUMENT

At the Bankruptcy Court level, Appellants' Motion to Remand had first asserted that the Bankruptcy Court lacked jurisdiction over the Complaint and First Amended Complaint, and had secondarily asserted that the Bankruptcy Court should exercise its discretion to abstain from presiding over the action. *See Waimana AP*, ECF 10 (Motion to Remand) at 1. On appeal, however, Appellant does not address the Bankruptcy Court's jurisdiction at all, but only challenges the Bankruptcy Court's discretionary denial of remand under the *Cedar Funding*

4

factors.³ *See* Opening Br. at 2, 15. Accordingly, Appellants have waived all jurisdictional arguments on appeal. *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 336 (9th Cir. 2017) (all arguments not raised by a party in its opening brief are deemed waived as a matter of law). *See also Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 fn. 7 (9th Cir. 1999).

Appellants cite to *Bates v. Mortg. Elec. Registration Sys., Inc.,* to establish that a denial of a motion to remand is reviewed on appeal with a *de novo* standard (*see* Opening Br. at 17), but *Bates* dealt specifically with dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, which is not applicable here.⁴ While questions of bankruptcy court jurisdiction are reviewed *de novo,* bankruptcy courts have broad discretion to remand, or decline to remand, cases over which they otherwise have jurisdiction – and on appeal, these decisions are reviewed on an abuse-of-discretion standard. *See In re Enron Corp.,* 296 B.R. 505, 508 (C.D. Cal. 2003). *See also Akhoian,* 630 B.R. at 333; *Caesars,* 588 B.R. at 237 and 241.

---

³ Appellant's opening brief appears to largely be a cut-and-paste of their opening brief filed in the simultaneous appeal of the Dismissal Order (Case No. 22-435, ECF 20). For the Court's ease of review, HTI attaches as **Exhibit B** hereto a computer-generated redline of the two opening briefs.

⁴ In connection with the use of the *de novo* review standard, *Bates* cites to *A–1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1242–43 (9th Cir. 2000), a case that does not deal with remand, but rather is an appellate review of whether a district court had subject matter jurisdiction.

5

Pursuant to 28 U.S.C. § 1452(b), the decision to remand or not remand, in a case like the present which has been removed from state court to a bankruptcy court, may be made on "any equitable ground." While the term "equitable ground" is not defined, the term appears to be used not to distinguish equitable grounds from legal grounds in a traditional sense, but rather indicates any ground "which is reasonable, fair, or appropriate." 1 COLLIER ON BANKRUPTCY ¶ 3.07; *Things Remembered v. Petrarca*, 516 U.S. 124, 133 (1995).

In the event this Court finds it necessary to address the Bankruptcy Court's jurisdiction, HTI submits that the Bankruptcy Court had unequivocal jurisdiction to resolve the First Amended Complaint. Additionally, given the numerous reasons which strongly weighed against remanding the present dispute to State Court, the Bankruptcy Court did not abuse its discretion in issuing the Order Denying Remand. While the Bankruptcy Court did not elaborate in detail on its decision to deny remand, the decision was plainly supported by the weight of multiple *Cedar Funding* factors, as well as other significant considerations.

**A.     The Bankruptcy Court had clear jurisdiction to resolve the First Amended Complaint.**

In an attempt to divest the Bankruptcy Court of its jurisdiction to enforce its own orders, Appellants seek to characterize the First Amended Complaint as one rife with state law issues. Each of the causes of action in the First Amended

Complaint, however, center on whether a particular asset – SIC's interest in License 372 – was transferred to HTI through two Sales that the Bankruptcy Court presided over. Originally filed in the State Court, the First Amended Complaint seeks to prevent HTI from accessing certain "License 372 Easement areas," and also seeks damages from HTI for allegedly using its License 372 rights and other alleged misdeeds. *See* First Am. Compl. ¶¶ 49, 54, 58-60, 64. Among other false allegations, Appellants assert that HTI has "no license, nor any other legal right" to occupy Appellants' License 372 Easement, has "willfully used and damaged [Appellants'] License 372 Easement," and has "usurp[ed] [Appellants'] License 372 Easements and their License 372 Service Rights." *Id.* ¶¶ 50, 53, 58. Appellants' also have sought a declaratory relief determination that the Trustee "did not obtain 'SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands'." *Id.* ¶ 66. The determination of each of these issues rely wholly on the Bankruptcy Court's determination of what has occurred through the Sales: whether SIC's interest in License 372 was properly acquired by the Trustee through the Marshal Sale, and then sold to HTI through the 363 Sale. The Bankruptcy Court, in its issuance of the Final Enforcement Order, has affirmatively ruled that SIC's interest in License 372 was, in fact, properly acquired by the Trustee and then sold to HTI.

The Bankruptcy Court's jurisdiction to determine whether those assets were transferred through the Sales arose from its inherent authority to interpret and enforce its own orders that governed the two Sales. This jurisdiction remains present even if, as Appellants point out, the dispute is one purely between non-debtors. *See* Opening Br. at 16. *See, e.g., In re Petrie Retail, Inc.,* 304 F.3d 223, 228 (2d Cir. 2002) (finding that the bankruptcy court properly retained subject matter jurisdiction over a post-sale dispute between two non-debtors). The Bankruptcy Court is not stripped of this jurisdiction merely because, as Appellants also argue, the debtor is "not a party" to the dispute. *See* Opening Br. at 15. Federal case law bars "state court intrusions on all bankruptcy court orders." *See, e.g., In re McGhan*, 288 F.3d 1172, 1182 (9th Cir. 2002) (the bankruptcy court was required to reopen a proceeding to "protect its exclusive jurisdiction over the enforcement of its own orders.") *See also, e.g., Mendoza v. Gen. Motors, LLC*, Case No. 10-2683, 2010 WL 5224136, at *1-2 (C.D. Cal. Dec. 15, 2010) (enforcing a bankruptcy court's retention-of-exclusive-jurisdiction clause contained within a sale order, in connection with a class action lawsuit which would have required a determination of whether certain liabilities were assumed through the sale); *Spitfire Energy Group v. Presidio Petroleum*, Case No. 20-11442, 2022 WL 951553, at *11 (D. Del. Mar. 30, 2022) (dismissing arguments that urged for a different court to review the sale of a debtor's property) (the

plaintiff had wrongly "ignore[d] the fact that the property at issue was sold pursuant to a bankruptcy sale proceeding; but for the Bankruptcy Code and related sale proceeding and order, the sale at issue would not exist.").

Accordingly, the Bankruptcy Court held unerring jurisdiction to resolve the claims in the First Amended Complaint. In fact, filing the Complaint in State Court itself had constituted an active breach by SIC and Waimana of the terms of both Sale Orders. The Bankruptcy Court expressly retained jurisdiction in both the Marshal Sale Order and the 363 Sale Order regarding the interpretation, implementation, and enforcement of those orders. SIC and Waimana likely filed the Complaint intentionally hoping to obtain a conflicting ruling from the State Court which, unlike the Bankruptcy Court, had not presided over the Trustee's AP, the levy and execution of the Marshal Sale Assets, the Marshal Sale itself, the Settlement Agreement, the 363 Sale, or the Settlement AP, and did not have the benefit of understanding the long factual history between the parties.

**B. The Bankruptcy Court, not the State Court, was the best forum to resolve the dispute.**

*i. Because the claims in the First Amended Complaint are directly tied to the Bankruptcy Court's prior rulings, many of the* Cedar Funding *factors favor keeping the dispute at the Bankruptcy Court.*

The Bankruptcy Court was not only capable of resolving the dispute, but was the best forum to do so. This is because the First Amended Complaint hinges almost entirely on whether SIC's interest in License 372 was properly transferred through the Sales that occurred under the supervision of the Bankruptcy Court.[5] *See, e.g., In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 423 (3d Cir. 2013) (the bankruptcy court was "well suited to provide the **best interpretation** of its own order" involving a settlement it had previously approved) (emphasis added). *See also In re Gawker Media LLC*, 581 B.R. 754, 760–61 (Bankr. S.D.N.Y. 2017) ("This Court is in the best position to interpret its own orders, and its interpretation is entitled to substantial deference."). Because the Bankruptcy Court had already confirmed that SIC's interest in License 372 was properly purchased by HTI, HTI could not reasonably be found to have trespassed on areas covered by the SIC's interest in License 372 (the first cause of action in the First Amended Complaint), converted the service rights under License 372 (the second cause of action); usurped Appellants' rights under License 372 (the third cause of action); or damaged Appellants' business on the Hawaiian Home Lands through its negotiations with the DHHL regarding a limited right of entry that overlaps with the scope of SIC's interest in License 372 (the fourth cause of action). The fifth

---

[5] Having confirmed, in the Final Enforcement Order, that SIC's interest in License 372 was in fact transferred to the Trustee through the Marshal Sale, and then to HTI through the 363 Sale, the Bankruptcy Court had dismissed the First Amended Complaint on the grounds of issue preclusion. *See* Tr. Hr'g (August 1, 2022) at 20:13 – 21:7.

cause of action, seeking declaratory relief, *inter alia,* to establish that the Trustee did not obtain SIC's interest in License Agreement No. 372 would also largely be mooted.

The case of *In re Aramid Ent. Fund, LLC* is instructive. 628 B.R. 584 (Bankr. S.D.N.Y. 2021), *appeal dismissed sub nom. In re Aramid Ent. Fund Ltd.*, Case No. 21-4840, 2022 WL 118293 (S.D.N.Y. Jan. 12, 2022). In *Aramid*, the bankruptcy court noted that any review of the asserted state court claims would "require the interpretation of the Court's orders throughout the bankruptcy and an assessment of how . . . those orders affect[ed the] entitlement to relief . . . [and t]hat analysis may well in turn require consideration of the events and submissions that led to those orders." *Id.* at 584. Because multiple aspects of the bankruptcy were "integral mechanisms" that were "indispensable" to the asserted claims, the state-court proceeding "in reality arose in the . . . [b]ankruptcy." *Id.* The fact that the action was "inextricably intertwined" with the bankruptcy, and could not be severed from the purported state law claims, therefore led the bankruptcy court to find that permissive abstention would be inappropriate under the above-mentioned factors. *Id*. at 600.[6]

---

[6] This analysis is further supported by the line of jurisprudence which suggests that a bankruptcy court's interpretation and enforcement of its prior core orders, are also core proceedings over which bankruptcy courts exercise jurisdiction pursuant to 28 U.S.C. §§ 157(b). *In re Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 176 (3d Cir. 2004) (interpretation and enforcement of a sale order is a core proceeding).

11

The same conclusion has been reached by other courts facing similar situations. *See In re LandSource Communities Dev., LLC*, 612 B.R. 484, 494 (D. Del.), *aff'd sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747 (3d Cir. 2020), *cert. denied sub nom. Citizens Against Corp. Crime, LLC v. Lennar Corp.*, 141 S. Ct. 2725 (2021) (affirming the bankruptcy court's decision not to abstain, because the bankruptcy court was best suited to interpret its own order, even after the bankruptcy case had been closed, in light of its familiarity with the "complex and lengthy negotiations" that led to the confirmed plan that was at issue). *See also In re Kaiser Grp. Int'l, Inc.*, 421 B.R. 1, 16 (Bankr. D.D.C. 2009) (while state law served as the "basic framework for Plaintiffs' claims," the claims were "inseparable" from bankruptcy as they were "based upon conduct which occurred in anticipation of, during and for, and as a result of the bankruptcy," and thus permissive remand or abstention was not warranted); *In re Neel*, 554 B.R. 241, 247 (Bankr. D. Or. 2016) (declined to remand because, among other reasons, the action, while "cloth[ed] . . . in state law verbiage," sought to render certain foreclosure sales void, and would effectively nullify any subsequent transfers that received the protections of certain provisions of the Bankruptcy Code); *In re Tres Hermanos Dairy, LLC*, Case No. 11-10-14240-TR, 2014 WL 176772, at *5–6, *9 (Bankr. D.N.M. Jan. 16, 2014) (in addressing a state court action where the parties disputed the effect of the plan

confirmation order, the bankruptcy court declined to abstain as the matter went to the "heart" of the bankruptcy process).

The interrelated nature of the Sales with the claims in the First Amended Complaint cannot be ignored. Under the fourteen-factor *Cedar Funding* test cited by Appellants, each of the first, second, fifth, sixth, seventh, and eighth factors thus weigh heavily <u>against</u> a remand here, because the claims in the First Amended Complaint are inseparably intertwined with the Bankruptcy Court's prior rulings on the Marshal Sale and 363 Sale. These six factors address, respectively: (1st) the "effect or lack thereof on the efficient administration of the estate"; (2nd) the extent to which state law issues predominate over bankruptcy issues; (5th) the jurisdictional bases for removal other than 28 U.S.C. § 1334(b); (6th) the "degree of relatedness or remoteness of proceeding to main bankruptcy case"; (7th) the "substance rather than the form of an asserted core proceeding"; and (8th) the "feasibility of severing state law claims from core bankruptcy matters." *In re Cedar Funding, Inc.,* 419 B.R. 807, 821 n. 18 (B.A.P. 9th Cir. 2009).

Appellants have attempted to underscore state law issues in connection with the second factor, by asserting that "HHL issues and interpretation of License 372 and assignments and calculation of lost profits predominate." Opening Br. at 15. But the Bankruptcy Court need not, and in fact did not, rule on whether License 372 had been transferred based on an interpretation of any law governing the

Hawaiian Home Lands, or on an interpretation of License 372. The Bankruptcy Court's granting of relief in the Final Enforcement Order was tied to the fact that the Marshal Sale Order and the 363 Sale Order, which were clear on its face regarding the express transfer of assets, were not timely appealed and thus were to be enforced as written. *See, e.g.,* Tr. Hr'g (August 1, 2022) at 13:23-14:11 (discussing denial of Appellants' motion to reconsider the Final Enforcement Order). Accordingly, the various state law issues Appellants are now trying to highlight are mere distractions. Appellants may not attempt to sidestep the Bankruptcy Court's jurisdiction through clever drafting. *See Aramid*, 628 B.R. at 600 (the "drafting choice to assert only state-law theories does not override the substantive centrality of the . . . [b]ankruptcy to [the asserted] claims."); *Neel*, 554 B.R. at 247 (noting that although the complaint purported to raise "only state law issues," the "foundation[al] claim for relief" was an issue of bankruptcy law). *See also Gawker*, 581 B.R. at 760 ("The . . . abstention argument, like its jurisdictional argument, is based on a misunderstanding of the issue before the Court. The Court is not ruling on the sufficiency of the . . . [state law] claims, but instead, whether the claims, as pleaded, are barred by the Sale Order.")

### ii. The remaining *Cedar Funding* factors also disfavor remand.[7]

The remainder of the *Cedar Funding* factors do not move the needle in the opposite direction. In connection with the third factor (the "difficult or unsettled nature of applicable law," *see Cedar Funding*, 419 B.R. at 821 n. 18), Appellants have vaguely asserted that "any novelty surrounds HHL jurisdiction and license," without detailing the presence of any actual novelties. *See* Opening Br. at 15. In any event, even if this Court were required at some point in time to interpret or enforce the Hawaiian Homes Commission Act in order to adjudicate the First Amended Complaint on its merits, the Court certainly would be able to do so – and indeed has done so in the past. *See, e.g., In re Maunakea*, 448 B.R. 252 (D. Haw. 2011) (a case relied on by SIC in the opening brief of its appeal of the Final Enforcement Order, *see* Case No. 22-426 at ECF 32).

In connection with the fourth factor (the presence of related proceedings in state court or other nonbankruptcy proceedings, *see Cedar Funding*, 419 B.R. at 821 n. 18), Appellants note that they have a pending action against the DHHL for breach of License 372 and related claims in State Court. Opening Br. at 15. This is an action initiated by Appellants on the same day the First Amended Complaint was filed (*see* First Am. Compl., Exh. N), which did not exist at the time the

---

[7] HTI has not addressed the ninth factor (the burden on the bankruptcy court's docket) nor the thirteenth factor (comity), *see Cedar Funding*, 419 B.R. at 821 n. 18, because Appellants have not addressed those factors in their opening brief or in their Motion to Remand, and because those two factors are unlikely to make a significant impact on this Court's review of the Order Denying Remand.

Complaint in this dispute was initially filed. In this action against the DHHL, Appellants have asserted claims of breach of contract, breach of implied covenant of good faith and fair dealing, and breach of fiduciary duty by the DHHL in granting the limited right of entry to HTI, "making filings in the Bankruptcy Court," and negotiating a new license with HTI. *See id.*, Exh. N at 13-14. Appellants, however, cannot merely manufacture new State Court actions against different parties in order to push the needle towards remanding to the State Court.[8]

The tenth factor (the likelihood of forum shopping, *see Cedar Funding*, 419 B.R. at 821 n. 18) does not favor Appellants. Much like in *Aramid*, despite that the parties had notice and an opportunity to be heard in the bankruptcy proceeding, Appellants instead made a "subsequent effort to engineer a supposedly distinct state-court action," in a manner akin to forum-shopping. *See* 628 B.R. at 600.

The eleventh factor (the "existence of a right to a jury trial," *see Cedar Funding*, 419 B.R. at 821 n. 18) is neutral. Appellants admit that trial by jury has not been demanded (*see* Opening Br. at 16), and even if Appellants had sought one, a jury trial can be conducted by either the bankruptcy court or district court. Even where the parties do not consent to a jury trial by the bankruptcy court, the district court has the authority, by its own motion or by motion of a party, to remove the reference to the bankruptcy court in order for the district court to

---

[8] The State Court appears to have wholly dismissed Appellants' first amended complaint in this action on November 3, 2022. Appellants' appeal of the dismissal is presently being briefed.

conduct a jury trial. *See Kaiser*, 421 B.R. at 17. *Accord Aramid*, 628 B.R. at 600 (the seeking of a jury trial does not weigh heavily in favor of remand, and this consideration "pale[s] compared to the many reasons for keeping the case" in the bankruptcy court.")

In connection with the twelfth factor (the "presence in the proceeding of nondebtor parties," *see Cedar Funding*, 419 B.R. at 821 n. 18), this factor is also neutral, particularly where, as here, Appellants (and HTI) all previously participated in the underlying proceedings in front of the bankruptcy court or otherwise were in privity with those participants. *See Tres Hermanos*, 2014 WL 176772, at *5–6 (noting that all but one of the parties had appeared at the relevant hearings in front of the bankruptcy court). HTI refers the Court to its discussions on privity in its simultaneously-filed opposition brief in connection with Appellants' appeal of the dismissal of the First Amended Complaint: Case No. 22-435, ECF 21 at 13.

In connection with the fourteenth factor (the "possibility of prejudice to other parties in the action," *see Cedar Funding*, 419 B.R. at 821 n. 18), Appellants argue that they, as "native Hawaiian organizations and beneficiaries of the HHL trust rely on their rights under License 372 and HHCA, which is a part of the Hawaii State Constitution." Opening Br. at 17. This appears to be a conclusory, baseless rehash of Appellants' other arguments. There is nothing which suggests

that Appellants would be prejudiced by having their claims heard in a Bankruptcy Court in the District of Hawaii, as compared to the State Court. In contrast, HTI, who specifically purchased assets pursuant to Section 363 of the Bankruptcy Code, would face significant prejudice by having to relitigate each of these issues in front of a state court with limited experience in bankruptcy sales.

Given the sheer weight of the factors against remanding this dispute to State Court, the Bankruptcy Court plainly did not abuse its discretion in declining to remand the case.

## CONCLUSION

For the foregoing reasons, HTI respectfully requests that the Court affirm the Order Denying Remand.

DATED: Honolulu, Hawaii, April 24, 2023.

PETTIT LAW HAWAI'I LLLC

    /s/ Ted N. Pettit
TED N. PETTIT
and
MORGAN, LEWIS & BOCKIUS LLP
ANDREW J. GALLO
MELISSA Y. BOEY

Attorneys for HAWAIIAN TELCOM, INC.